UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| J.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-30205-MGM |
| | ) | |
| LORILEE I, LLC, et al., | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HOUSING AND | ) | |
| COMMUNITY DEVELOPMENT, et al., | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

<u>REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STRIKE, THIRD
PARTY DEFENDANT HAP COMMUNITY HOUSING SERVICES, INC.'S  MOTION TO
STRIKE, AND THIRD PARTY DEFENDANT GANDARA MENTAL HEALTH CENTER,
INC.'S MOTION TO DISMISS DEFENDANTS' THIRD PARTY COMPLAINT</u>
(Dkt. Nos. 27, 39, and 61)

ROBERTSON, U.S.M.J.

This is an action for violations of the Fair Housing Act of 1968, as amended, 42 U.S.C.

§§ 3601-3619, 3631, and the Massachusetts Anti-Discrimination Law, Mass. Gen. Laws ch.

151B §§ 1-10.  The plaintiff, J.A., brings suit against Lorilee I, LLC ("Lorilee I"), Lorilee

Property Management, LLC ("LPM"), Craig L. Spagnoli, and Christopher A. Spagnoli

(collectively, "Defendants"), claiming that they unlawfully discriminated against her in the rental

of a dwelling on the basis of her disability and her receipt of public assistance.  Defendants deny

that they discriminated against J.A. and have filed a third-party complaint against HAP

Community Housing Services, Inc. ("HAP"), and Gandara Mental Health Center, Inc.

("Gandara") (collectively "Third-Party Defendants"), for breach of contract, negligence, and

interference with contractual relations (Dkt. No. 24).[1]  The matter is presently before the court on

"Plaintiff's Motion to Strike Defendants' Third-Party Complaints Against Third-Party

Defendants HAP Community Housing Services, Inc., and Gandara Mental Health Center, Inc."

(Dkt. No. 27), "HAP Community Housing Services, Inc. Motion to Strike Defendants' Third-

Party Complaint" (Dkt. No. 39), and "Third-Party Defendant Gandara Mental Health Center,

Inc.'s Motion to Dismiss" (Dkt. No. 61), all three of which have been referred to the undersigned

for report and recommendation (Dkt. Nos. 42, 62).  For the reasons set forth below, the court

concludes that Defendants' third-party complaint is improper under Fed. R. Civ. P. 14(a) and

recommends that J.A.'s, HAP's, and Gandara's motions be GRANTED and Defendants' third-

party complaint be DISMISSED.

    I.    Background

        a.    Plaintiff's Complaint

        J.A. is in recovery from substance use disorder, and she receives housing and mental

health services from the formerly named "Shelter Plus Care" program ("S+C") (Dkt. No. 1 at ¶¶

1, 6, 50).[2]  S+C is a federal grant program, which helps individuals like J.A. by providing mental

health and housing subsidies through the U.S. Department of Housing and Urban Development

(Dkt. No. 1 at ¶¶ 1, 11-14).  *See also Hoostein v. Mental Health Ass'n (MHA), Inc.*, 98 F. Supp.

3d 293, 295 n.3 (D. Mass. 2015).

>           S+C is designed to link rental assistance to supportive services for
>           hard-to-serve homeless persons with disabilities (primarily those
>           who are seriously mentally ill; have chronic problems with alcohol,

---

[1] Defendants also named the Massachusetts Department of Housing and Community
Development and the Massachusetts Department of Health as third-party defendants, but later
stipulated to the dismissal without prejudice of their claims against the two state agencies (Dkt.
No. 77).

[2] S+C has been consolidated with other federal homelessness assistance grant programs into a
single program called "Continuum of Care" (*id*. at ¶ 13).  *See also* 42 U.S.C. §§ 11381-11407b.

drugs, or both; or have acquired immunodeficiency syndrome (AIDS) and related diseases) and their families. The program provides grants to be used for rental assistance for permanent housing for homeless persons with disabilities. Rental assistance grants must be matched in the aggregate by supportive services that are equal in value to the amount of rental assistance and appropriate to the needs of the population to be served.

24 C.F.R. § 582.1 (a).

In Massachusetts, S+C funds are administered by the Massachusetts Department of Housing and Community Development ("DHCD") and the Massachusetts Department of Health's Bureau of Substance Abuse Services ("BSAS") (Dkt. No. 1 at ¶ 15). DHCD contracted with HAP, a regional non-profit housing agency, to administer the housing assistance component of S+C (*id*. at ¶¶ 16-17). HAP's S+C services include administering rental assistance payments, inspecting apartments, and screening prospective residents for their credit and criminal histories (*id*. at ¶ 17). BSAS contracted with Gandara, a regional provider of mental health counseling services, to administer the mental health component of S+C (*id*. at ¶¶ 18-19). Gandara provides its mental health services to S+C recipients through its "Nia program," which is specially designed to serve individuals and families who are in recovery from substance use disorder (*id*. at ¶¶ 20-21). Participants in the Nia program must comply with program rules, including attending in-house group meetings, participating in three Narcotics Anonymous or Alcoholics Anonymous support groups per week, engaging in substance abuse counseling, and submitting to random drug testing (*id*. at ¶ 22). Nia administrators may terminate services to any participant who violates the program rules, and, when a Nia participant is terminated from the program, the participant automatically loses rental assistance (*id*. at ¶¶ 23-24). Nia participants must also comply with the terms of their lease agreements with the landlords providing their rental housing, and landlords have the right to enforce the terms of those lease agreements, including

the right to evict Nia participants who violate any terms or conditions of their leases (*id.* at ¶¶ 25-26).

888 State Street in Springfield, Massachusetts ("888 State Street") is a 15-unit residential property that has operated as a housing site for participants in the Nia program since April 2000 (*id.* at ¶¶ 7, 27).  Lorilee I purchased 888 State Street from the City of Springfield for $140,000 on February 13, 2013 (*id.* at ¶ 28).  The sale included a deed restriction and a land use restriction, both of which required Lorilee I to continue to lease the units at 888 State Street to participants of S+C, or of a similar program, for thirty years (*id.* at ¶¶ 29-32).

J.A. and her son moved into Unit 24 at 888 State Street in or around February 2012 (*id.* at ¶¶ 33, 36).  Throughout J.A.'s tenancy, all 15 of the residential units at 888 State Street were occupied by individuals who, like her, were participating in the Nia program and receiving S+C rental assistance (*id.* at ¶ 34).  Throughout J.A.'s tenancy, she was in compliance with Nia and S+C program requirements, as well as the terms of her lease (*id.* at ¶¶ 53, 55).

On December 3, 2013, another tenant of 888 State Street, who had been expelled from the Nia program and was being evicted by Defendants, caused flooding and property damage to the building (*id.* at ¶ 42).  Thereafter, on December 11, 2013, Defendants terminated the tenancies of every tenant at 888 State Street, including J.A. (*id.* at ¶ 44).  Additionally, on December 16, 2013, Defendants sought and obtained a release from the deed restriction and a ten-year waiver of the land use restriction such that they were no longer required to lease the units at 888 State Street to participants of S+C, or of a similar program (*id.* at ¶¶ 46-47).

J.A. alleges that Defendants' mass eviction of the tenants at 888 State Street and their solicitation of a release from the deed restriction and waiver of the land use restriction were motivated by intentional discriminatory animus against individuals like her with substance use

disorder and who receive S+C assistance (*id*. at ¶¶ 45, 48).  According to J.A., as a result of

Defendants' discriminatory acts, she incurred financial costs, lost a unique housing opportunity

close to her medical and social supports, was deprived of her right to housing on an equal basis

with other non-disabled persons, and suffered great emotional distress (*id*. at ¶ 67).  J.A. asserts

claims against Defendants for violations of the Fair Housing Act of 1968, as amended, 42 U.S.C.

§§ 3601-3619, 3631, and the Massachusetts Anti-Discrimination Law, Mass. Gen. Laws ch.

151B § 4 (5), (6), (7), and (10), and she seeks declaratory and injunctive relief, as well as

compensatory and punitive damages (*id*. at ¶¶ 70-78).

      b.    <u>Defendants' Third-Party Complaint</u>

      Defendants deny that they discriminated against J.A. and, in their third party complaint,

they assert that their alleged discriminatory acts were the result of HAP's and Gandara's failures

to properly administer the S+C program.  Defendants allege that, between their purchase of 888

State Street in February 2013 and early 2014, they "experienced constant difficulties with the

Gandara and HAP administrators and participants," and that police call logs from that time show

dozens of calls from 888 State Street (Dkt. No. 24 at ¶¶ 25, 75).  Defendants enumerate the

difficulties with HAP and Gandara as consisting of their failures "to properly provide services

and coordinate with [Defendants] and the participants regarding issues like payment of monies

owed, keys and deposits required, and the need for leases and other documentation," as well as

"to provide [Defendants] with proper and accurate information, … to properly obtain and process

the necessary paperwork for the program participants, and … to adequately communicate

regarding payments and safety issues, including, but not limited to, drug dealing, threats,

weapons possession, theft, and property damage" (*id*. at ¶¶ 26-27).  Defendants identify a

number of specific problems with the tenants of 888 State Street, including an allegation

particular to J.A. that she was not communicating respectfully to a member of Defendants' staff (*id*. at ¶ 37). Defendants allege the same December 3, 2013 incident as J.A., in which another tenant "caused major damage to the building by letting her water overflow," in addition to "crashing a car and vandalizing the hallways" (*id*. at ¶ 61). Further, Defendants allege that on December 8, 2013, another tenant "reported she saw a man hold a gun to a girl's head outside her door and demand sex for the money the girl owed on a drug sale" (*id*. at ¶ 67). According to Defendants, "[a]s a result of [Gandara's and HAP's] negligence in failing to adequately address the numerous issues presented by [S+C] participants, and after the events of early December and recognizing the unsafe condition for building occupants, [LPM] asked Gandara to temporarily stop placing people in the building" (*id*. at ¶ 70). "Further, as a precaution and in order to be prepared if necessary to possibly remove participants, [LPM] issued a Notice to Quit dated December 11, 2013, for eleven of the units. In addition, until [LPM] was positive the building was safe, [LPM] temporarily suspended housing any new tenants in the building" (*id*. at ¶ 71). Defendants allege that, thereafter, they were informed that S+C had "no interest in continuing in its use of [888 State Street]," and LPM's offers to allow S+C participants who did not present problems to stay at 888 State Street or to take S+C participants in their other buildings were rejected (*id*. at ¶¶ 73-74). Instead, DPH advised Defendants that it was attempting to find new housing for the S+C participants, and, by April 15, 2014, all of the S+C participants had been moved out of 888 State Street (*id*. at ¶¶ 73, 79).

Defendants bring claims for breach of contract and negligence against Third-Party Defendants, alleging that HAP and Gandara breached agreements that they had with Defendants, which required them to "properly operate and administer the [S+C] program," and the duty of care that they owed to Defendants, which required them, "at a minimum, to properly administer

and oversee the [S+C] program" (*id*. at ¶¶ 81-93).  Defendants assert that, to the extent they are found to have engaged in unlawful discrimination against J.A., it was caused, "in whole or in part by … [HAP's and Gandara's] failing to discharge their duties owed to [Defendants] pursuant to the agreements" (*id*. at ¶ 86), and "the negligence and/or carelessness of [HAP and Gandara]" (*id*. at ¶ 92).  Consequently, "if [J.A.] recovers against Defendants … or if Defendants … should suffer any loss or adverse result due to th[e] [first-party] action, … [HAP and Gandara] will and shall be liable to [Defendants] for all or part of such recovery, loss or adverse result" (*id*. at ¶¶ 87, 93).  In addition to the breach of contract and negligence claims, Defendants bring claims for intentional and negligent interference with contractual relationships, asserting that HAP and Gandara interfered with Defendants' contractual relationships with the S+C tenants of 888 State Street by requiring the tenants to break their leases, removing the tenants from 888 State Street, and not allowing any S+C tenants to enter into leases for any of Defendants' other properties (*id*. at ¶¶ 94-103).  As to these final two counts, Defendants seek compensatory damages (*id*.).

II.   Discussion

A.  Standard of Review

Federal Rule of Civil Procedure 14(a) provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  *Id*.  "A third-party claim is only proper under Rule 14(a) when 'the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant.'"  *Katz v. Denn*, Civ. Action No. 05-40014-FDS, 2007 WL 763896, at *6 (D. Mass. Mar. 12, 2007) (quoting *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994)).  *See also Terumo Ams. Holding, Inc. v. Tureski*, Civil Action No. 14-

13838-DJC, 2016 WL 5376300, at *6 (D. Mass. May 23, 2016) ("Because '[t]he purpose of Rule 14 is to enable the defendant to transfer to the third-party defendant the liability asserted against him by the original plaintiff[,] … the Rule permits claims against a third party only if that third person's liability is in some way dependent upon the outcome of the main claim." (quoting *Davis v. Prot. One Alarm Monitoring, Inc.*, Civil Action No. 03-40195-FDS, 2005 WL 3728711, at *6 (D. Mass. Nov. 2, 2005) (alterations in original))). "Thus, 'a third-party complaint must be founded on a third-party's actual or potential liability to the defendant for all or part of the plaintiff's claims against the defendant.'" *Id.* (quoting *Am. Zurich Inc. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008)). "'A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is … the essential criterion of a third-party claim.'" *Id.* at *10 (quoting *Am. Zurich Inc. Co.*, 512 F.3d at 805). Conversely, "'Rule 14(a) "does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim."'" *Id.* at *6 (quoting *Davis*, 2005 WL 3728711, at *6). "If the claim is separate or independent from the main action, impleader [is improper]." *Katz*, 2007 WL 763896, at *6 (quoting *Bathgate*, 27 F.3d at 873).

"After a third-party claim is asserted, any party may move to strike the third-party claim." *Nga Truong v. Pageau*, Civ. Action No. 12-12222-TSH, 2013 WL 6122097, at *2 (D. Mass. Nov. 19, 2013) (citing Fed. R. Civ. P. 14 (a)(4)). "The Court has 'considerable discretion' in deciding whether to strike the third party complaint." *Id.* (quoting *Old Republic Ins. Co. v. Concast*, 99 F.R.D. 566, 568 (S.D.N.Y. 1983)). "When making this decision, the Court should look to see if the claim is 'obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim.'" *Id.* (quoting *Perez Cruz v. Fernandez Martinez*, 551 F. Supp.

794, 799 (D.P.R. 1982)).  *See also* Fed. R. Civ. P. 14 advisory committee's notes to 1963

amendment ("[T]he court has discretion to strike the third-party claim if it is obviously

unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim, or to sever

the third-party claim or accord it separate trial if confusion or prejudice would otherwise

result.").  When a third-party complaint is improperly filed under Fed. R. Civ. P. 14(a), however,

a court should dismiss it and need not reach the merits of stated claims or the issue of prejudice

to the plaintiff.  *Katz*, 2007 WL 763896, at *6.

Defendants' third-party complaint in this case alleges that HAP and Gandara failed to

properly operate and administer S+C and, thereby, breached their agreements with Defendants

and the duty of care they owed to Defendants.  J.A., HAP, and Gandara have moved to strike

Defendants' third-party complaint on the ground that Defendants' contract and negligence claims

are separate and independent from J.A.'s discrimination claims.  They also argue that allowing

impleader would prejudice J.A.'s claims by complicating the litigation, confusing the issues, and

distracting the jury.  Defendants counter that their claims are not separate and independent

because they "derive entirely from [J.A.'s] claims of alleged discrimination in the first-party

action," and "arise from the exact same set of facts i.e. the administration and operation of [S+C]

and the events that resulted in the issuance of the Notice to Quit against [J.A.]" (Dkt. No. 52 at

6).  Defendants further argue that J.A. will not be prejudiced by the addition of their third-party

claims because "[Defendants'] defense against [J.A.'s] claims will be the exact same facts as will

be put forward to prosecute the Third Party claims" (*id*. at 9).

The court agrees with J.A., HAP, and Gandara that Defendants' breach of contract and

negligence claims are not dependent on the outcome of J.A.'s discrimination claims, and,

therefore, the third-party complaint is improper under Fed. R. Civ. P. 14(a).  Whether or not

HAP and Gandara "properly provide[d] services and coordinate[d] with [Defendants] and the participants regarding issues like payment of monies owed, keys and deposits required, and the need for leases and other documentation," or "provide[d] [Defendants] with proper and accurate information, … properly obtain[ed] and process[ed] the necessary paperwork for program participants, and … adequately communicate[d] regarding payments and safety issues" (Dkt. No. 23 at ¶¶ 26-27), are separate and independent issues from whether Defendants engaged in unlawful discrimination against individuals with disabilities and who receive public assistance when Defendants issued the Notices to Quit and obtained the release and waiver from the deed and land use restrictions.  Defendants could be found to have discriminated against J.A., while HAP and Gandara could be found not to have breached their agreements with Defendants or been negligent, and vice versa.  There is no dependent relationship between the outcomes of J.A.'s discrimination claims and Defendants' third-party claims.

Indeed, to the extent there is any relationship between the two sets of claims, it is an inverse and not a dependent one.  In order to succeed on her claims, J.A. will have to show that discriminatory intent was a substantial motivating factor in Defendants' conduct.  *Maciel v. Thomas J. Hastings Props., Inc.*, Civ. Action No. 10-12167-JCB, 2012 WL 3560815, at *13 (D. Mass. Aug. 16, 2012) (citing *Casa Marie, Inc. v. Sup. Ct. of P.R.,* 988 F.2d 252, 269 (1st Cir. 1993)).  J.A. can show discriminatory intent "either through direct or circumstantial evidence, or by making a prima facie case of discrimination under the *McDonnell Douglas* framework."  *Id.* (citing *South Middlesex Opportunity Counsel, Inc. v. Town of Framingham*, 752 F. Supp. 2d 85, 96 (D. Mass 2010)).  Under the *McDonnell Douglas* framework, if the factfinder accepts Defendants' position that HAP's and Gandara's inept program management is a legitimate, nondiscriminatory reason for Defendants' actions, the ultimate burden shifts back to J.A., and

she can prevail only if she proves that Defendants actions were motivated by discriminatory intent, HAP's and Gandara's administrative failings notwithstanding. *Id*. at *14. If the factfinder sides with Defendants and finds that their actions were not discriminatory, then Defendants will not owe J.A. any damages for which HAP and Gandara could be secondarily liable. On the other hand, if the factfinder sides with J.A. and finds that Defendants' actions were discriminatory, then the factfinder will have rejected HAP's and Gandara's administrative failures as the real reason for the Defendants' actions, negating the possibility HAP and Gandara could somehow be secondarily liable for J.A.'s damages.[3]

Defendants' argument that their third-party claims "derive entirely from [J.A.'s] claims of alleged discrimination in the first-party action," where they "arise from the exact same set of facts i.e. the administration and operation of [S+C] and the events that resulted in the issuance of the Notice to Quit against the [J.A.]," (Dkt. No. 52 at p. 6), is unavailing. Even assuming Defendants' proposition is correct, factual overlap is not the standard. Even if a "third-party claim arises out of the same general set of facts as the main claim," Fed. R. Civ. P. 14(a) is not

---

[3] Of note, while Defendants have labeled their claims breach of contract and negligence, in reality they appear to be "claim[s] for indemnification dressed up in different language." *Davis*, 2005 WL 3728711, at *7. Defendants assert the breach of contract and negligence claims only "[t]o the extent that it is adjudged in the First-Party action that [Defendants] … committed a discriminatory act," and their claimed damages are the amounts, if any, owed by Defendants to J.A. for her discrimination claims (Dkt. No. 23 at ¶¶ 86-87, 92-93). See *Davis*, 2005 WL 3728711, at *6 (observing that a third-party contract claim seeking damages arising from an alleged breach in the amount, if any, owed by the defendant to the plaintiffs in the first-party action was really a claim for indemnification despite the label attached to it by the defendant). Courts that have addressed the issue have found that there is no right to contribution or indemnity under the Federal Housing Act. *See Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 421423 (E.D.N.Y. 2009) (listing the other district courts to have addressed the issue and reaching the same conclusion based on the Supreme Court's analysis in *Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77 (1981), finding no right to contribution under the Equal Pay Act or Title VII). Thus, HAP and Gandara cannot be derivatively liable for the unlawfully discriminatory conduct of Defendants in violation of the Federal Housing Act, if any.

satisfied unless the third-party's liability is in some way dependent on the outcome of the main claim. *Terumo Ams. Holding, Inc.*, 2016 WL 5376300, at *6 (quoting *Davis*, 2005 WL 3728711, at *6). As discussed above, Defendants' third party claims for breach of contract and negligence fail to meet this standard. As a result, those claims are improper under Fed. R. Civ. P. 14(a) and should be dismissed, and Defendants' independent claims for interference with contractual relations likewise cannot proceed. *See Davis*, 2005 WL 3728711, at *6 (noting that, if a third-party complaint otherwise meets Rule 14 requirements, a court, exercising supplemental jurisdiction, may allow independent claims to proceed as well).

Having reached the conclusion that Defendants' third-party complaint is improper under Fed. R. Civ. P. 14(a), the court need not address the parties' arguments relating to the prejudice or lack thereof that would result from maintenance of the third-party complaint.

IV.     Conclusion

For these reasons, it is this court's RECOMMENDATION that J.A.'s, HAP,'s and Gandara's motions be GRANTED and Defendants' third-party complaint be DISMISSED.[4]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: November 14, 2016

---

[4] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.